# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY KEITH CONNER, | ) | |
| Plaintiff, | ) | Civil Action No. 12-538 |
| v. | ) | |
| | ) | Judge Cathy Bissoon |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 13) will be denied, and Defendant's Motion for Summary Judgment (ECF No. Doc. 17) will be granted.

Larry Keith Conner ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 – 433 ("Act"). An Administrative Law Judge ("ALJ") denied benefits to Plaintiff on March 12, 2009, following an administrative hearing. (R. at 15 – 47).[1] Subsequently, a request for review by the Appeals Council was denied, and Plaintiff filed the present Complaint in this Court on April 26, 2012. (R. at 1 – 6; ECF No. 2). Defendant filed an Answer on August 17, 2012. (ECF No. 9). Cross motions for summary judgment followed. (ECF Nos. 13, 17).

---

[1] Citations to ECF Nos. 10 – 10-8, the Record, *hereinafter*, "R. at __."

The ALJ determined that Plaintiff had medically determinable severe impairments in the way of status-post bilateral knee replacement, osteoarthritis of the hip, and obesity. (R. at 17). However, he had the functional capacity to perform sedentary work, except that he could not be required to use foot controls, climb, balance, bend ninety degrees or crawl. (R. at 18). Consistent with the testimony of the vocational expert, the ALJ found that Plaintiff qualified for a significant number of jobs in existence in the national economy, and was not eligible for DIB. (R. at 20 – 21).

Plaintiff objects to this decision, arguing that the ALJ failed to give proper consideration to the medical opinions of Dr. David Evanko, M.D., and Alan H. Klein, M.D., and in failing to find Plaintiff disabled due to an inability to maintain regular attendance or sustain on-task requirements. (ECF No. 14 at 8 – 10). Defendant counters that there was no medical evidence indicating that Plaintiff could not sustain regular attendance or on-task requirements, and that Drs. Evanko and Klein's findings of "disability" were unsupported by objective evidence from the record. (ECF No. 18 at 12 – 18). The Court finds Defendant's argument persuasive.

In order to qualify for DIB, a claimant must prove to the Commissioner that he or she is incapable of engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F. 2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met this requirement. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003). Assuming a claimant meets his or her burden at Steps 1 through 4, Step 5 places a burden upon the Commissioner to show that a particular claimant is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F. 2d 26, 28 (3d Cir. 1986).

In aid of his first argument, Plaintiff asserts that his subjective complaints, as well as the objective medical record, provide ample evidence to support findings by Drs. Evanko and Klein which – if given controlling weight – would render Plaintiff eligible for disability benefits. (ECF No. 14 at 8 – 9). Specifically, he points to personal testimony of extremely limited activities of daily living as a result of debilitating pain, difficulty sleeping, and difficulty ambulating, as allegedly corroborated by a June 6, 2008 treatment note by Dr. Evanko. Plaintiff also cites to findings by Dr. Klein that indicated Plaintiff required hip replacement surgery and allegedly was "disabled" from work. While Plaintiff certainly experienced impairment and limitation as a result of double knee replacement surgeries and hip pain, the record is not as supportive of Plaintiff's position as he would have the Court believe.

Orthopedic surgeon Gregory Lavigne, M.D., performed a total right knee arthroplasty on July 6, 2007, after several years of pain and dysfunction following a fall at work. (R. at 149, 187 – 88). Plaintiff underwent a total left knee arthroplasty on October 19, 2007, also performed by Dr. Lavigne. (R. at 190 – 91). Plaintiff tolerated both procedures well. (R. at 152, 192). Plaintiff engaged in physical therapy subsequent to each procedure. (R. at 164 – 70, 195 – 97). Plaintiff initially was limited in functional capacity by pain and weakness, but made significant, steady progress over the duration of his therapy sessions. (R. at 164 – 70, 195 – 97). Plaintiff was able to ambulate without assistive devices and was functional, overall. (R. at 164 – 70, 195 – 97, 204).

At a December 2007 follow-up visit, Dr. Lavigne examined Plaintiff and noted that, following his knee replacement surgeries, Plaintiff had been doing "extremely well." (R. at 202). On June 17, 2008, Dr. Lavigne completed a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities. (R. at 200 – 01). In it, Dr. Lavigne found that, as a

3

result of bilateral total knee arthroplasty, Plaintiff would be limited to frequent lifting and carrying of up to twenty-five pounds. (R. at 200 – 01). Plaintiff could stand and walk at least six hours of an eight hour work day. (R. at 200 – 01). Plaintiff could sit at least six hours, with a sit/stand option. (R. at 200 – 01). Plaintiff was unlimited with respect to pushing and pulling, but could only occasionally balance and climb, and could never kneel, stoop or crouch. (R. at 200 – 201).

Plaintiff's primary care physician, Dr. Evanko, appears once in the case record, on June 6, 2008. (R. at 243 – 44). He examined Plaintiff because of complaints of significant knee pain over the previous two weeks. (R. at 243 – 44). Plaintiff claimed to have difficulty sleeping and ambulating. (R. at 243 – 44). Dr. Evanko observed swelling, tenderness and pain with movement of Plaintiff's knees. (R. at 243 – 44). His assessment was that Plaintiff was experiencing osteoarthritis of the knee. (R. at 243 – 44). Dr. Evanko referred Plaintiff to an orthopedic surgeon. (R. at 243 – 44).

Plaintiff was attended to by Dr. Klein – an orthopedic physician and associate of Dr. Lavigne's – for complaints of pain on two occasions. On September 22, 2008, Plaintiff presented complaining of pain in his groin and knees. (R. at 246 – 47). Dr. Klein observed no abnormalities with Plaintiff's knees, and believed that his pain was originating in his hips. (R. at 246 – 47). Dr. Klein noted that x-rays of Plaintiff's hips showed moderate arthritis. (R. at 246 – 47). Plaintiff also was noted to be "quite heavy." (R. at 246 – 47). Plaintiff was scheduled for injection into his hips for pain relief. (R. at 246 – 47). Dr. Klein also indicated that Plaintiff's "work status" was "disabled." (R. at 246 – 47).

At an October 13, 2008 follow-up visit with Dr. Klein, Plaintiff's pain was found to have abated by approximately eighty percent following hip injections. (R. at 245). Again, Dr. Klein

4

noted no abnormality in Plaintiff's knees. (R. at 245). Plaintiff was advised to consider hip replacement surgery to deal with his pain. (R. at 245). Dr. Klein indicated that Plaintiff's "work status" was still "disabled." (R. at 245). No further treatment notes appeared on the record.

As noted by the ALJ, the findings of Drs. Evanko and Klein are hardly evidence of debilitating pain and limitation qualifying Plaintiff for disability benefits. (R. at 18 – 19). Dr. Lavigne's more prolific medical findings also do not echo Plaintiff's claims of pain and limitation. (R. at 18 – 19). Moreover, the ALJ's residual functional capacity assessment limited Plaintiff to a greater degree than Dr. Lavigne's functionality assessment. (R. at 18 – 19). Simply put, the objective medical record did not corroborate Plaintiff's subjective allegations of pain and limitation precluding him from work. These subjective claims were, in fact, contradicted by Dr. Lavigne's findings in his assessment of Plaintiff's functional abilities. (R. at 18 – 19). In such instances, the ALJ is not required credit a claimant's complaints of pain and limitation.

The ALJ is required to assess the intensity and persistence of a claimant's pain, and determine the extent to which it impairs a claimant's ability to work. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). This includes determining the accuracy of a claimant's subjective complaints of pain. *Id.* While pain itself may be disabling, and subjective complaints of pain may support a disability determination, allegations of pain suffered must be consistent with the objective medical evidence on record. *Ferguson v. Schweiker*, 765 F. 2d 31, 37 (3d Cir. 1985); *Burnett v. Comm'r of Soc. Sec.*, 220 F. 3d 112, 122 (3d Cir. 2000). In the present case, Plaintiff's subjective complaints were not reflected in the record.

Further, with respect to Dr. Klein's belief that Plaintiff was "disabled," the Court notes – as the ALJ did in his discussion – that no findings were provided to substantiate such a conclusion. (R. at 18 – 19). The Court of Appeals for the Third Circuit has held that

5

"the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 361 (3d Cir. 2011) (citation to quoted source omitted). Moreover, the determination of disabled status for purposes of receiving benefits – a decision reserved to the Commissioner – will not be affected by a medical source simply because it states that a claimant is "disabled" or "unable to work." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). A showing of contradictory evidence and an accompanying explanation will allow an ALJ to reject a treating physician's opinion outright, or accord it less weight. *Brownawell v. Comm'r of Soc. Sec.*, 554 F. 3d 352, 355 (3d Cir. 2008). Additionally, a medical opinion is not entitled to any weight if unsupported by objective evidence in the medical record. *Plummer v. Apfel*, 186 F. 3d 422, 430 (3d Cir. 1999) (citing *Jones v. Sullivan*, 954 F. 2d 125, 129 (3d Cir. 1991)). The ALJ did not err in rejecting the "disabled" finding.

As to Plaintiff's contention that the ALJ improperly omitted limitations from his residual functional capacity assessment stating that Plaintiff would be off-task approximately ten to fifteen percent of any given work day, and that he would be absent from work three or more times per month, the Court finds Plaintiff's argument to be unavailing. No objective medical evidence supported such limitations. Further, to the extent that Plaintiff wishes this Court to rely upon his subjective complaints to justify the inclusion of such limitations in a residual functional capacity assessment, the Court declines to do so. As noted above, Plaintiff's subjective complaints of pain and limitation were, at best, unsupported and, at worst, contradicted. The ALJ did not err in failing to include the above limitations in his residual functional capacity assessment.

The ALJ's decision was supported by substantial evidence, and for all of the reasons stated above, the Court hereby enters the following:

## II. ORDER

Plaintiff's Motion for Summary Judgment (**ECF No. 13**) is **DENIED**, Defendant's Motion for Summary Judgment (**ECF No. 17**) is **GRANTED**, and the decision of the ALJ is **AFFIRMED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

IT IS SO ORDERED.


April 24, 2013                                              s\Cathy Bissoon
                                                                           Cathy Bissoon
                                                                           United States District Judge

cc (via ECF email notification):

All Counsel of Record